IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS JENNINGS LUNDVALL       *
                               *
        v.                     *   Civil No. JFM-05-646
                               *
BOARD OF EDUCATION OF ANNE     *
ARUNDEL COUNTY, ET AL.         *
                            *****

MEMORANDUM

Thomas Jennings Lundvall ("Jennings"), a disabled minor as defined by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., by and with his parents Katherine and Robert Lundvall (collectively "Plaintiffs"), bring this action for the alleged failure of Defendants, the Board of Education of Anne Arundel County and Superintendent Eric Smith, to propose a special education plan for Jennings that complied with the IDEA for the 2004-05 school year.  Plaintiffs also seek tuition reimbursement for Jennings' education at a private school that year.  Defendants have moved for summary judgment.  The motion will be granted.

I.

Jennings' status under the IDEA entitles him to a free appropriate public education ("FAPE") based upon an individualized education program ("IEP") designed to meet his unique special education needs.  20 U.S.C. § 1400(d)(1)(A) (2000).  The IEP is developed at meetings between a team of individuals consisting of the child's parents, "at least one regular education teacher of the child (if the child is, or may be, participating in the regular education environment)," at least one special education teacher, a representative of the local educational agency, and others who may be invited in the parties discretion.  20 U.S.C. § 1414(d)(B) (2000).  Parents of a disabled child who are not satisfied with their child's IEP have a right to an impartial due process hearing before a hearing officer and a right to an appeal to the state

educational agency. *Id*. § 1415(f) & (g). Any party aggrieved by the result of the administrative determinations can seek review in a state court or a federal district court. *Id*. § 1415(i)(2).

Jennings has superior intellectual capabilities, but has been diagnosed with a specific learning disability and an attention deficit and hyperactivity disorder. According to the allegations in the complaint, from 2001-2004, the Anne Arundel County Public Schools ("AACPS") placed Jennings and funded his education at the Lab School, a private school consisting entirely of disabled students.[1] Beginning in June 2004, the parties attempted to meet and develop Jennings' IEP for the upcoming school year when he would enter the sixth grade. Plaintiffs cancelled this meeting and the subsequently rescheduled meeting in July. The next proposed dates for the meeting were August 17, 20, or 23. The parties agreed to meet on August 23 at which point Plaintiffs expressed no objection to the proximity of the meeting date to the beginning of the 2004-05 school year.

During the 2003-04 school year, Jennings made significant progress at the Lab School, presumably prompting AACPS to recommend an IEP with elements of mainstreaming in co-taught environments. At the meeting on August 23, the parties reached "general agreement regarding the [Jennings'] progress, his present levels of performance, his goals and objectives, methodologies, and necessary modifications." *Lundvall v. Anne Arundel County Pub. Schs*., No. MSDE-AARU-OT-04-45461, ¶ 27 (Md. Office of Admin. Hearings Nov. 18, 2004) ("ALJ Op."). Based upon these agreed upon goals and objectives, the IEP team recommended twenty hours of special education instruction, some additional related services, and instruction in self-

---

[1] The ALJ decision states that funding occurred only for the 2001-02 and 2003-04 school years. (*Compare* Compl. ¶¶ 7, 8, 13 *with* ALJ Op. ¶ 4.)

2

contained math and language arts classes.  (*Id.* at 8; *see also* Defs.' Reply at 11.)  The disagreement between the parties arose from the recommendations that Jennings receive his science and social studies education in a co-taught classroom of approximately 20-25 students and that he transfer to the Learning Academy, a special education program located at Severna Park Middle School, a public school in Anne Arundel County.  The Learning Academy serves sixth through eighth grade students who have high cognitive potential, but also experience language deficits.  Unlike the Lab School, the Learning Academy has self-contained classes and the opportunity for mainstreaming with non-disabled students in co-taught environments where both a general education and a special education teacher are present.

At some point following these recommendations, Plaintiffs' counsel abruptly terminated the meeting and said she would address their concerns in a due process hearing.  The next day Linda Donahue, the Central IEP Chairperson, prepared a letter to Plaintiffs that clarified the issues discussed at the meeting and invited further discussion in light of the contention between the parties. (Compl., Ex. B.)  Plaintiffs chose to pursue their due process rights under the IDEA.  Jennings remained at the Lab School, and his parents funded his education for the 2004-05 school year for which they now seek reimbursement from AACPS under the IDEA.

Administrative Law Judge David Hofstetter ("ALJ") conducted a two day hearing, heard from several witnesses presented by both sides, and reviewed more than fifty exhibits.[2]  The ALJ

---

[2] At the administrative hearing, Plaintiffs called the following witnesses: Linda Donahue, Central IEP Chairperson, AACPS, Ellen McGinn, Speech Pathologist, AACPS, Nancy Hendee, School Psychologist, AACPS, and Dr. Edwin Oliver, School Psychologist at the Lab School (admitted as an expert in the field of school psychology). AACPS also called Donahue, McGinn, and Hendee as experts in their respective fields.  In addition, they called Renee Woolfolk, Special Education Teacher, AACPS, Director at the Learning Academy (admitted as an expert in the field of special education), and Kathleen Brennan, Special Education Teacher, AACPS

ruled in the Defendants' favor, finding that the AACPS's recommendation to place Jennings at the Learning Academy qualified as a free, appropriate, public education program pursuant to the IDEA and denying Plaintiffs' request for tuition reimbursement. (ALJ Op. at 24). Plaintiffs seek review of this decision.

II.

According to the IDEA, a reviewing court is to review the records of the administrative proceedings, hear additional evidence at the request of a party, and base its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B) (2000). However, a district court reviewing an administrative decision must give "due weight" to the underlying administrative proceedings, whose findings are "entitled to prima facie correctness." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991), *aff'd*, 39 F.3d 1176 (4th Cir. 1994) (table). If a reviewing court does not accept the underlying findings of fact, it must explain its departure. *Doyle,* 953 F.2d at 105.

A reviewing court inquires whether (1) the school system has violated the IDEA's procedural requirements to such an extent that the violations are serious and detrimentally impact upon the child's right to a free public education, *Gerstmyer v. Howard County Public School*, 850 F. Supp. 361, 364 (D. Md. 1994), and whether (2) the individualized educational program developed through the Act's procedures is reasonably calculated to enable the child to receive educational benefits, *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206-07 (1982). According to the Fourth Circuit, "once a procedurally proper IEP has been formulated a reviewing court should be reluctant indeed to second guess the

---

(admitted as an expert in the field of special education). (ALJ Op. at 4-5.)

judgement of education professionals." *Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200, 1207 (4th Cir. 1990) (citing *Rowley*, 458 U.S. at 207-08). The burden of proving that the administrative decision is erroneous is on the party challenging that decision. *E.g., Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991).

To satisfy the IDEA, the FAPE must only be "calculated to confer some educational benefit" and Congress did not intend to guarantee the best education that money could buy. *A.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir. 2004) (citing *Rowley*, 458 U.S. at 207, 189). The IDEA has a basic floor, not a ceiling, requirement. *See Tice*, 908 F.2d at 1207. An element of the FAPE requires the student to be placed in the least restrictive environment ("LRE"), meaning that the disabled child is to participate in the same activities as non-disabled children to the maximum extent appropriate. 20 U.S.C. § 1412(a)(5)(A) (2000). "Mainstreaming of handicapped children into regular school programs . . . is not only a laudable goal but is also a requirement of the Act." *DeVries v. Fairfax County Sch. Bd.*, 882 F.2d 876, 878 (4th Cir. 1989). "In some cases, a placement which may be considered better for academic reasons may not be appropriate because of the failure to provide for mainstreaming." *Id*. (quoting *Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir. 1983)).

III.

Defendants accurately summarize Plaintiffs' contentions as follows: (1) the school system did not make a program recommendation to implement Jennings' IEP prior to the beginning of the 2004-05 school year; (2) the school system "presented the parents with documents for signature that were outdated and misrepresented . . . [the student's] special education rights" thereby having a "chilling effect" on the meeting; (3) the school system did not

complete its process and make a placement recommendation at the IEP meeting; (4) the school system did not have a general educator at the IEP meeting; and (5) the ALJ did not give deference to the Plaintiffs' witness, Dr. Edwin Oliver, a psychologist at the Lab School. (Defs.' Reply at 1-2 (citing Pls.' Opp'n at 6, 8, 9.)) Plaintiffs allege that these procedural errors effectively denied Jennings a FAPE. However, the ALJ found to the contrary, and his fact finding process and legal conclusions are not clearly erroneous.

A.

Plaintiffs claim that Defendants failed to develop a program for Jennings before the 2004-05 school year due to the proximity of the IEP meeting to the beginning of the school year. In his decision, the ALJ properly found that the short transition period between the IEP meeting and the beginning of the school term was caused by Plaintiffs who repeatedly cancelled and rescheduled the proposed IEP meetings during a three month period. Although Plaintiffs assert that the delay in this case is akin to *Gerstmyer*, those facts are in stark contrast to the circumstances here. (Pls.' Opp'n at 7.) In *Gerstmyer*, this Court awarded tuition reimbursement because the parents acted diligently by requesting an IEP four months before the school year began, but the school board failed to act for six months. 850 F. Supp. 361.

B.

Plaintiffs contend that a final placement decision was made in the August 24 letter and not at the IEP meeting, which renders the ALJ's substantive decision about the placement recommendation irregular, contrary to the evidence, and inconsistent with legal authority. (Pls.' Opp'n at 4.) According to Plaintiffs, the placement decision was not finalized, the IEP was incomplete, and therefore AACPS denied Jennings a FAPE. Defendants argue that Plaintiffs did

6

not raise this concern at the hearing and are precluded from doing so now.  The argument may well be meritorious.  In any event, the record reveals admissions from Plaintiffs' counsel in correspondence and at the administrative hearing stating that Plaintiffs were made aware of the placement recommendation at the August 23 meeting.  (Defs.' Reply at 7.)  Further, the record shows that Plaintiffs' counsel abruptly terminated the IEP meeting and rejected AACPS's invitation for further discussion ensuring that the proposed IEP (as reiterated in the August 24 letter) became the de facto IEP.

## C.

With regard to the outdated and inaccurate documents about which Plaintiffs complain, the ALJ found Plaintiffs' argument irrelevant because the record shows that Donahue removed the objectionable language and Jennings' parents, Plaintiffs' counsel, and Dr. Oliver signed the document at the meeting.  (Defs.' Reply at 5.)  The ALJ's ruling was correct.

## D.

Plaintiffs are correct that under § 1414(d)(B) of the IDEA, a general educator should be present at a meeting where an IEP is developed.  However, a procedural error by itself is not fatal; it must cause the student to lose an educational opportunity in order to be a material violation under the IDEA.  *E.g., DiBuo v. Bd. of Educ. of Worcester County*, 309 F.3d 184 (4th Cir. 2002).

Here, the ALJ found the absence of a general educator at the August 23 meeting was not a material violation because the "IEP team was not without meaningful input from professionals familiar with [Jennings] in the classroom setting . . . includ[ing] Dr. Oliver."  (ALJ Op. at 20.) The ALJ detailed the amount of contact Dr. Oliver, Donahue, and McGinn had with Jennings

7

and pointed out that Donahue and McGinn had extensive knowledge of the program at the Learning Academy. (*Id*. at 20 n.7.) Further, the ALJ found that "any AACPS classroom teacher who would have been present would not have actually had the experience of having [Jennings] in the classroom and, therefore, would likely have had little expertise to contribute beyond that supplied by the other AACPS personnel and by Dr. Oliver." (*Id*. at 20).[3]

E.

Plaintiffs contend that the ALJ's conclusions were erroneous because Dr. Oliver, the witness with the most extensive knowledge of Jennings, testified that it was not appropriate to transition Jennings to a new school. On this issue, the ALJ weighed the evidence and made a reasonable judgment. *See Bd. of Educ. of Montgomery County v. Hunter*, 84 F. Supp. 2d 702, 706 (D. Md. 2000) ("Faced with such contradictory testimony, the fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility, " citing *Doyle*, 953 F.2d at 104.). The ALJ's reasoning shows that he evaluated Dr. Oliver's testimony about Jennings' difficulty in dealing with change in light of testimony demonstrating his recent improvement in this area and considered information provided by AACPS about the transitional process.[4] In the end, he determined that the short transition period would have been "far from

---

[3]Plaintiffs also contend that Donahue and McGinn had limited and outdated contact with Jennings and the ALJ placed "the opinions of AACPS' team members over Jennings present educators and therapists." (Pls.' Opp'n at 9-10 (citing Tr. at 178.)) However, Plaintiffs themselves called these two individuals as witnesses at the administrative hearing and fail to demonstrate how the ALJ's reliance on their testimony deviated from the normal fact-finding process.

[4]According to Dr. Oliver, Jennings had problems adjusting to change and that a rapid transition to a new school would be "very detrimental to his progress, . . . and that he would have great difficulty being able to generalize or use the skills or strategies that he used at Lab given such a sudden move without any preparation." (Tr. at 148.) However, the ALJ also considered

8

ideal," but "the weight of the evidence is that [Jennings] would have accomplished a generally successful transition allowing him to obtain significant educational benefits from his placement at the [Learning Academy]."[5]  (ALJ Op. at 17).  The ALJ noted that even given Dr. Oliver's assessment that Jennings would face difficulties in a co-taught setting, the placement would still suffice to confer some educational benefit on Jennings, all that is required under the IDEA.  (*Id*. at 23.)

IV.

The ALJ found the evidence to be "overwhelming" that the recommended placement at the Learning Academy would provide Jennings with a FAPE.  (*Id*. at 22.)  This finding is fully supported by the record.

In their opposition, Plaintiffs central substantive objection is the transition from a completely self-contained special education private school to a "public program where approximately 50% of his time would be spent in the general education setting."  (Pls.' Opp'n at 8.)  However, parental discontent over a change in the IEP, which is required to be reviewed and developed annually, is insufficient to overrule the opinions of the education professionals under the IDEA review process.

In any event, the recommended transition from an entirely self-contained special education program to a new program with general education instruction in Jennings' stronger

---

Dr. Oliver's testimony on cross-examination that revealed Jennings "had successfully coped with various transitions in the recent past, including the Lab School's relocation on two occasions to new buildings in different neighborhoods, a sharply increased number of students at the school, and new teachers."  (ALJ Op. at 17.)

[5]The ALJ's opinion contained a typographical error, placing the words "Lab School" at the end of the quoted sentence.

subjects was reasonably appropriate based on Jennings' demonstrated progress the previous school year.  The record shows that Jennings has superior intellectual capabilities, and he demonstrated progress in many areas, especially science and social studies, which led the IEP team to recommend that he attend co-taught classes in these two subjects where he would be sufficiently challenged.  The recommendations included at least twenty hours of special education instruction, additional related services, and self-contained instruction in his weaker subjects.  Further, in comparison to the Lab School, the Learning Academy is the least restrictive environment due to the possibility for Jennings to attend classes with non-disabled students.

      A separate order is being entered herewith.

Date:  August 31, 2005            /s/_____
                                        J. Frederick Motz
                                        United States District Judge